800 A.2d 31

**Darren R. STOVALL**

v.

**STATE of Maryland.**

**No. 826, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

June 10, 2002.

712

Byron L. Warnken (Law Offices of Bonnie L. Warnken, on the brief), Baltimore, for appellant.

Ann M. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before MURPHY, C.J., and DAVIS and SHARER, JJ.

MURPHY, C.J.

In this appeal from the Circuit Court for Prince George's County, Darren R. Stovall, appellant, presents two questions for our review:

1. Whether the Circuit Court erred in its belief (1) that the legislature intended a narrow reading, limited to only two circumstances, when it adopted the "in the interests of justice" standard for the reopening of a closed post conviction proceeding, and (2) that the court was therefore not authorized, in this case, to exercise discretion to reopen, which is particularly erroneous in light of this Court's understanding that, under the "in the interests of justice" standard, the grounds for exercising discretion are "virtually open ended?"

2. Whether serious attorney error, by post conviction counsel, in failing to post convict trial counsel for three serious attorney errors and appellate counsel for one serious attorney error, all four of which prejudiced the defendant, creates entitlement to post conviction relief, based on ineffective assistance of post conviction counsel, under the Due Process Clause of the Fourteenth Amendment, as interpreted in *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)?

■ The first question is of no consequence whatsoever to the merits of this appeal because (1) the circuit court concluded that "a reopening may be appropriate when the petitioner proves both that he received ineffective assistance from post conviction counsel and that, as a result of that ineffective assistance of counsel, there is a substantial or significant possibility that the ultimate verdict of the trier of fact would have been affected in a manner adverse to the petitioner," and (2) appellant was granted a full and fair opportunity to argue for post conviction relief on the theory that "his post conviction counsel was incompetent for failing to litigate any of the four issues ... through which [appellant] could have obtained post conviction relief, but for the incompetency of ... [his] post conviction counsel in failing to post convict trial counsel or appellate counsel for their ineffective assistance." Thus, the issue of whether the circuit court (in the words of appellant's brief) "applied a very narrow and incorrect standard for determining when the legislature authorized the reopening of a closed post conviction proceeding" is moot.[1]

■ We hold that a post conviction petitioner (1) is entitled to the effective assistance of post conviction counsel, and (2)

---

1. We do note, however, that in *Love v. State,* 95 Md.App. 420, 621 A.2d 910 (1993), this Court stated that "[t]he list of possible grounds for the granting of a new trial by the trial judge within ten days of the verdict is open ended." *Love,* 95 Md.App. at 427, 621 A.2d 910. After discussing the history of the expanding grounds for which a court may grant a new trial, we noted that Maryland Rule 4–331 states that, when such action is in the "interests of justice," the court may order a new trial. *Id.* We concluded that the term, "in the interests of justice" includes a wide array of possibilities. *Id.*

has a right to reopen a post conviction proceeding by asserting facts that—if proven to be true at a subsequent hearing—establish that post conviction relief would have been granted but for the ineffective assistance of the petitioner's post conviction counsel. We shall therefore consider the merits of appellant's arguments that:

A. Post conviction counsel was incompetent in the failure to post convict appellate counsel for failing to appeal the preserved reversible error of insufficiency of the evidence to convict Mr. Stovall of robbery and felony murder.

B. Post conviction counsel was incompetent in the failure to post convict trial counsel for failing to obtain a ruling on his motion in limine as to the "prior bad acts/other crimes" evidence of the alleged robbery of [another robbery victim].

C. Post conviction counsel was incompetent in failing to post convict trial counsel for not arguing double jeopardy, based on prior jeopardy—not between the second and third trials, but between the first and second trials.

D. Post conviction counsel was incompetent in the failure to post convict trial counsel for failing to file a motion for modification or reduction of sentence.

The circuit court concluded that "[appellant] is unable to convince me that, even assuming *arguendo,* that [appellant's post conviction counsel's] representation of [appellant] at his first post conviction hearing was 'ineffective,' for any of the reasons asserted, that as a result of that, there is a 'substantial or significant possibility that the verdict of the trier of fact would have been affected." We agree with that conclusion as to issues A, B and C. We are persuaded, however, that under *State v. Flansburg,* 345 Md. 694, 694 A.2d 462 (1997), appellant is entitled to file a belated motion for reconsideration of sentence.

### Background

■ Appellant's petitions for post conviction relief stem from three jury trials involving the same incident. The Hon-

orable Graydon S. McKee, III, presided over all three jury trials. Appellant was represented in all three trials by the same attorney. According to appellant's brief, "[o]n November 21, 1989, [appellant] was indicted, in Case No. 89–2616B, for first degree murder, second degree murder, voluntary manslaughter, and a weapons offense . . . .[and][o]n July 16, 1990, [appellant] was indicted, in Case No. 91–1309C, for first degree felony murder and robbery, based on the same transaction as in Case No. 89–2616B." From our judicial notice of the circuit court records,[2] however, we conclude that only one murder indictment was returned against appellant.[3]

On November 21, 1989, the Prince George's County Grand Jury returned the following indictment:

The Grand Jurors of the State of Maryland, for the body of Prince George's County, on their oath do present that **PERRY ANTONIO BRASHEARS** and **DARREN REGINAL STOVALL,** late of Prince George's County, aforesaid, between the 31st day of August, nineteen hundred and eighty nine, and the 1st day of September, nineteen hundred and eighty nine, at Prince George's County, aforesaid, feloniously, wilfully and of their deliberately premeditated malice aforethought, did kill and murder Ed Williams IV, in violation of the Common Law of Maryland, and against the peace, government and dignity of the State. (Murder)

### SECOND COUNT

The Grand Jurors of the State of Maryland, for the body of Prince George's County, on their oath do present that **PERRY ANTONIO BRASHEARS** and **DARREN REGI-**

---

**2.** We may take judicial notice of the official entries in circuit court records. *Campbell v. State,* 37 Md.App. 89, 97 n. 5, 376 A.2d 866 (1977).

**3.** The indictment charging appellant with murder complied with the statutory form authorized by Art. 27, § 616. A person charged in an indictment that complies with that section can be convicted of first degree felony murder, first degree premeditated murder, second degree murder, or manslaughter. *Wood v. State,* 191 Md. 658, 666, 62 A.2d 576 (1948); *Gray v. State,* 6 Md.App. 677, 684, 253 A.2d 395 (1969).

NAL STOVALL, late of Prince George's County, aforesaid, between the 31st day of August, nineteen hundred and eighty nine, and the 1st day of September, nineteen hundred and eighty nine, at Prince George's County, aforesaid, did unlawfully carry a dangerous weapon openly, to wit: knife, with the intent of injuring a person in an unlawful manner, in violation of Article 27, Section 36 of the Annotated Code of Maryland, 1957 edition, as amended, and against the peace, government and dignity of the State. (Carry dangerous weapon openly)

Those charges were considered by the first jury. On June 8, 1990, Judge McKee declared a mistrial because the first jury was deadlocked. At this point, the State entered a nolle prosequi to the "carrying openly" charge. On July 16, 1990, a superseding indictment was returned against appellant. On that date, however, the Grand Jury indicted only Willie Boris Chestnut III and Kevin Joseph Feagan for the murder of Mr. Williams. Appellant was charged as follows in the second count of that indictment:

The Grand Jurors of the State of Maryland, for the body of Prince George's County, on their oath do present that **WILLIE BORIS CHESTNUT III, KEVIN JOSEPH FEAGAN** and **DARREN REGINAL STOVALL,** late of Prince George's County, aforesaid, between the 31st day of August, nineteen hundred and eighty nine, and the 1st day of September, nineteen hundred and eighty nine, in the County aforesaid, feloniously did rob Ed Williams IV, and violently did steal from him United States currency, in violation of the Common Law of Maryland, and against the peace, government and dignity of the State. (Robbery)

On January 31, 1991, the second jury found appellant not guilty of first degree premeditated murder, and lesser included offenses, but deadlocked on the felony murder and robbery charges. Judge McKee declared a mistrial as to those charges.

On April 23, 1991, appellant's trial counsel filed a motion to dismiss based on collateral estoppel. Judge McKee denied

that motion. This Court affirmed that decision in an unreported opinion (*Stovall v. State*, No. 1893, September Term, 1991, unreported opinion filed November 17, 1991.) On May 11, 1992, appellant was tried on the felony murder and robbery charges. On May 18, 1992, the third jury convicted him of those offenses. Judge McKee denied a motion for a new trial and imposed a life sentence, with all but twenty-five years suspended. Appellant's trial counsel thereafter failed to file a motion for modification of sentence.

Appellant appealed his convictions to this Court on August 31, 1992. The lawyer who represented appellant argued that the circuit court erred by (1) refusing to bind the State to a stipulation from a prior trial as to the testimony of the medical examiner; (2) restricting appellant's examination of two witnesses, who were also former co-defendants, with respect to their plea bargains; and (3) permitting the prosecutor to make improper references to "non-evidence" during the State's rebuttal argument. On September 22, 1993, this Court affirmed the judgment of the circuit court. (*Stovall v. State*, No. 1383, September Term, 1992, unreported opinion filed September 22, 1993.)

On October 25, 1996, appellant filed a petition for post conviction relief. His post conviction counsel alleged that (1) the circuit court committed reversible error by not granting the motion to dismiss and by not estopping the State from trying appellant a third time; (2) the State failed to establish a prima facie case of robbery, which required that the felony murder conviction be vacated; and (3) trial counsel rendered ineffective assistance of counsel by (a) not asserting all available defenses, (b) arguing alibi to the jury when trial counsel should have known that alibi would not prevail, (c) arguing perfect and imperfect self-defense when trial counsel should have known self-defense is not a valid defense to felony murder. On May 5, 1997, the circuit court denied the petition. Appellant filed an application for leave to appeal, which this Court denied on November 11, 1997.

On August 19, 1997, appellant filed a motion to reopen his post conviction proceeding, arguing that (1) collateral estoppel, res judicata, and/or double jeopardy precluded the State from retrying the felony murder and robbery counts during the third trial; (2) the circuit court committed reversible error by not granting the motions for judgment of acquittal; and (3) appellate counsel rendered ineffective assistance of counsel, based on his failure to raise two issues on appeal.[4] On March 13, 1998, the circuit court denied appellant's motion. On March 23, 1998, appellant filed an application for leave to appeal, which this Court denied on June 23, 1998.

On May 11, 1999, appellant filed another motion to reopen the closed post conviction proceeding. The circuit court filed an order setting a hearing date and instructing the parties to address the issues of (1) the circuit court's authority to reopen a closed post conviction proceeding, (2) the standard for reopening a closed post conviction proceeding, and (3) any limitation on the reopening of a closed post conviction proceeding. On December 21, 1999, the circuit court held a hearing on appellant's motion to reopen. The circuit court ultimately denied that motion, and this appeal followed.

### The Post Conviction Petitioner's Right to Effective Assistance of Counsel

A post conviction petitioner has a right to reopen a petition upon a showing that the petitioner's post conviction counsel rendered ineffective assistance during the post conviction proceedings. The Maryland Public Defender Act, in pertinent part, provides:

§ 4. Duty to provide legal representation.

(b) *Included proceedings.*—Legal representation shall be provided indigent defendants or parties in the following proceedings:

---

4. Appellant contended that his appellate counsel should have argued (1) insufficiency of the evidence as to robbery and felony murder, and (2) double jeopardy.

(3) Postconviction proceedings under Article 27, Annotated Code of Maryland, when the defendant has a right to counsel pursuant to § 645A of that article;

Article 27 has been transferred to the Criminal Procedure Article, effective October 1, 2001. Section 645A(f) has been transferred to § 7–108 of the Criminal Procedure Article without any substantive change. That section provides:

(f) *Right to counsel and hearing.*—(1) Subject to paragraph (2) of this subsection, a petitioner is entitled to the assistance of counsel and a hearing on a petition filed under this section.

(2) If a defendant seeks to reopen a postconviction proceeding under subsection (a)(2)(ii) of this section, the court shall determine whether assistance of counsel or a hearing should be granted.

▮ A defendant has a broader right to counsel under the Maryland Public Defender Act than under the United States Constitution. *McCarter v. State*, 363 Md. 705, 713, 770 A.2d 195 (2001); *State v. Flansburg*, 345 Md. 694, 700, 694 A.2d 462 (1997). Even if they do not have a federal constitutional right to counsel in post conviction proceedings, indigent persons who are entitled to petition for relief under the Maryland Post Conviction Procedure Act have a statutory right to counsel under the Maryland Public Defender Act, and "[r]egardless of the source, the right to counsel means the right to the effective assistance of counsel." *State v. Flansburg, supra,* 345 Md. at 703, 694 A.2d 462.

In *Flansburg,* Mr. Flansburg was represented by counsel from the Office of the Public Defender when the circuit court revoked his probation and reimposed the portion of the sentence that had been suspended when he was placed on probation. *Id.* at 696, 694 A.2d 462. Following the hearing, he made two timely written requests that counsel file a motion for modification of sentence. *Id.* After learning that his counsel never filed that motion, he filed a petition for post conviction relief, claiming that he was denied effective assistance of counsel. *Id.*

The *Flansburg* Court rejected the State's argument that even though appellant might have a statutory right to counsel, "such right should not include the same type of 'effective assistance' which is associated with a constitutional right to counsel." Thus, under Maryland law, convicted persons have a right to the assistance of counsel with respect to proceedings under the Post Conviction Procedure Act, and "the right to counsel means the right to the effective assistance of counsel." *Id.* at 703, 694 A.2d 462.

Other jurisdictions have reached similar conclusions. In *Lozada v. Warden, State Prison,* 223 Conn. 834, 613 A.2d 818 (1992), the appellant filed a second petition for habeas corpus on the ground that he was denied effective assistance of counsel in his first habeas corpus proceeding. Connecticut provides by statute for the appointment of counsel for an indigent person "in any habeas corpus proceeding arising from a criminal matter ..." *Id.* at 821. The State asserted that there was no right to effective assistance of habeas corpus counsel "because there is no statutory reference to the qualifications of counsel and, therefore, no remedy is available should counsel prove ineffective." *Id.* The court disagreed with that argument, holding that "[i]t would be absurd to have the right to appointed counsel who is not required to be competent." *Id.* It went on to state that the *Strickland* standard [5] applied to evaluate counsel's performance. *Id.* at 823.

In *Jackson v. Weber,* 637 N.W.2d 19, (S.D.2001), the appellant sought subsequent habeas corpus relief on the ground that his original habeas corpus counsel was ineffective.[6] The *Weber* Court held that appellant did have a right to effective assistance of counsel at a habeas corpus proceeding, and applied the *Strickland* test to determine whether appellant was entitled to relief:

---

**5.** *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**6.** South Dakota statutory law provides that counsel be appointed for indigent prisoners in habeas proceedings.

We will not presume that our legislature has mandated some "useless formality" requiring the mere physical presence of counsel as opposed to effective and competent counsel. . . . A position that a statutory right to counsel does not mean effective assistance of counsel is at odds with commonsense and our prior analytical framework.

*Id.* at 23 (citation omitted). *See also Grinols v. State,* 10 P.3d 600, 618 (Alaska Ct.App.2000); *Dunbar v. State,* 515 N.W.2d 12, 14–15 (Iowa 1994); *Crump v. Warden,* 113 Nev. 293, 934 P.2d 247, 253 (1997); *State v. Velez,* 329 N.J.Super. 128, 746 A.2d 1073, 1076 (2000); *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 303 (1999).

In *State v. Thomas,* 328 Md. 541, 616 A.2d 365 (1992), the Court of Appeals adopted the *Strickland* standard for determining whether a criminal defendant received ineffective assistance of counsel. To obtain post conviction relief, the post conviction petitioner must establish that (1) counsel's representation "fell below an objective standard of reasonableness," *id.* at 556, 616 A.2d 365 *(quoting Strickland,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), and (2) the petitioner's case was prejudiced as a result of counsel's deficient performance, *id.* at 557, 616 A.2d 365. We shall apply the *Strickland* test to the performance of post conviction counsel in the case at bar.

## Appellant's "Sufficiency" Argument

According to appellant, because "[t]here was no direct or circumstantial evidence—only speculation—of either the corpus delecti [sic] of robbery or criminal agency of [appellant]," appellant's post conviction counsel should have post convicted the counsel who represented appellant in *Stovall v. State,* No. 1383, September Term, 1992. There are two reasons why we reject this argument. First, the evidence—which included appellant's written statement—was sufficient to establish that appellant was one of three men who murdered the victim during a robbery.

■ There was no money on the victim's person when his body was discovered about 1:30 p.m. on September 1, 1989. The State produced evidence that at 11:30 p.m. on August 31, 1989, the victim was in possession of over $1,000. While it is true that appellant did not confess that he participated in the robbery, he did admit that (1) he was present when his friends "jumped" the victim, and (2) while his friends were assaulting the victim, he hit the victim with a stick or a baseball bat. The jurors were entitled to infer that appellant participated in the robbery-murder. "There are few facts, even ultimate facts, that cannot be established by inference." *Moore v. State,* 73 Md.App. 36, 45, 533 A.2d 1, *cert. denied,* 311 Md. 719, 537 A.2d 273 (1988).

> There is nothing mysterious about the use of inferences in the factfinding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts.

*Robinson v. State,* 315 Md. 309, 318, 554 A.2d 395 (1989).

Second, as to this issue, we agree with the State's argument that, because appellant "did not call post conviction counsel, or ... trial or appellate counsel as witnesses, ... he failed to rebut the presumption that one or more of these attorneys acted as a matter of strategy." Having reviewed the statement of facts set forth in the brief filed on appellant's behalf by the experienced counsel who represented appellant on direct appeal, we can understand why appellant did not call that lawyer (or any other lawyer) to explain why no "sufficiency" argument was asserted on appellant's behalf.[7]

### Appellant's "Other Crimes Evidence" Argument

■ According to appellant, his post conviction counsel should have post convicted trial counsel for failing to preserve for appellate review the issue of whether Judge McKee erro-

---

7. Md. Rule 8–504(a)(4) requires that a brief include "[a] clear concise statement of the facts material to a determination of the questions presented." Appellant's written statement is material to the "sufficiency" issue, but no mention is made of that statement in appellant's brief.

neously admitted evidence that appellant had robbed another victim. The victim of the "other" crime, one Casey Oates, was living with the victim on August 31, 1989 and was in the victim's home some time about 11:00 p.m. on that date when appellant and an accomplice visited the victim. According to Mr. Oates, fifteen minutes after the victim left his home with appellant and the accomplice, they returned without the victim, pulled a knife on Mr. Oates, told him that the victim was "in the car," searched the victim's house, and asked Mr. Oates where they could find money, safes, guns and drugs.

Under these circumstances, in which it appears that the crimes are so related to each other that proof of one tends to establish the other,[8] we are simply not persuaded that, if appellant's trial counsel had insisted that Judge McKee make an "on-the-record" analysis of this evidence, Judge McKee would have erred or abused his discretion in admitting this evidence under Maryland Rule 5–404(b).

### Appellant's "Double Jeopardy" Argument

■ Appellant argues that because "[m]urder is a single offense with disjunctive legal theories, . . . the former jeopardy theory of double jeopardy precluded the State from charging additional disjunctive methods of murder after jeopardy attached." According to appellant, "[t]he State does not realize that if the double jeopardy argument had been made after trial one, and before trial two, and if [appellant's] position is correct, trial two would never have taken place. Likewise, trial three would never have taken place." We are persuaded, however, that appellant's position is incorrect.[9]

---

8. Appellant's brief does not provide us with facts that establish (1) the relationship between Mr. Oates and the murder victim, (2) the location at which Mr. Oates was assaulted, (3) what time it was when Mr. Oates saw appellant and appellant's accomplice leave with the victim, and (4) what time it was when appellant and appellant's accomplice returned to the victim's home. Under Md. Rule 8–504(c)(4), those facts should have been included in appellant's brief.

9. We are also persuaded that, even if appellant's position were correct, a post conviction court could not find for appellant in the absence of

Contrary to appellant's assertion, felony murder and premeditated murder are not identical offenses, and the mistrial declared in trial one did not preclude the State from prosecuting appellant for felony murder. *Huffington v. State,* 302 Md. 184, 486 A.2d 200 (1985), which appellant cites, clearly states as much:

> Preliminarily, the premise for Huffington's argument, that in Maryland felony murder and premeditated murder are identical offenses with identical elements, is incorrect.

> \* \* \*

> While premeditated murder and felony murder have distinct elements, nevertheless, as indicated above, they would *generally* be deemed the same offense for purposes of the double jeopardy prohibition against successive trials. Thus, if a defendant had been prosecuted solely on a theory of premeditated murder, had been *convicted or acquitted,* and there had been no appeal, the prosecution would not be permitted to prosecute him a second time for the same homicide on a theory of felony murder.

302 Md. at 188–89, 486 A.2d 200 (emphasis added).

In *United States v. Corona,* 804 F.2d 1568 (11th Cir.1986), the appellants were originally charged—in a multi-count indictment—with racketeering, racketeering conspiracy, "as well as various related predicate offenses which were all incorporated into the racketeering and racketeering conspiracy counts." *Corona,* 804 F.2d at 1569. The jury was deadlocked and the court declared a mistrial. *Id.* Three months later, appellants were charged—in superseding indictments—with offenses that "did not change the general allegations [of the first trial] ...... However, several specific charges were altered, some new charges were added, and other charges were deleted." *Id.* Included in these changes was the "addi-

---

expert testimony that appellant's original post conviction counsel was ineffective for failing to recognize the applicability of such a sophisticated double jeopardy analysis.

tion of overt acts in furtherance of the conspiracy; and additional counts of mail fraud and Travel Act violations." *Id.*

 Appellants argued that, because they had been placed in jeopardy during the first trial, the superseding indictments should have been dismissed. The *Corona* Court rejected that argument, explaining:

[Appellants] base their argument on two well-established principles of law. First, defendants rely on the concept of "continuing jeopardy," set forth in *Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ..... Since jeopardy was not terminated by the declaration of a mistrial, it could not be double jeopardy to retry the defendant.

The second principle of law relied upon by defendants holds that a superseding indictment cannot be brought once a trial on the merits has begun. *See United States v. Del Vecchio,* 707 F.2d 1214, 1216 (11th Cir.1983); *United States v. Cole,* 755 F.2d 748, 757 (11th Cir.1985). Defendants combine the foregoing principles of law, arguing that since this case involves continuing jeopardy under *Richardson,* then this case is like a single trial for jeopardy purposes and a superseding indictment cannot be brought once trial has begun. The defendants have linked together two unrelated principles of law and have sought to draw conclusions which go beyond the purpose and rationale of the two established principles. Defendant's argument lacks force when we consider the rationale behind disallowing superseding indictments during a trial on the merits. The implicit rationale behind such holdings is that a defendant should have advance notice of the charges against him. *See, e.g., United States v. Edwards,* 777 F.2d 644, 649 (11th Cir.1985)(additional superseding charges in superseding indictment put defendants on notice, in a timely manner, of those charges against which they had to defend), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1645 (1986); *United States v. Wilks,* 629 F.2d 669, 672 (10th Cir.1980)(holding that superseding indictment before trial was not prejudicial to defendant since

it presented no factual questions that should not have been answered by defendant's investigation of original indictment). Changes in the substance of the indictment, therefore, should not be foisted upon a defendant after trial begins. However, this rationale does not apply in the current context. After a mistrial because the jury hung or for any other such reason, the defendant would have ample time to prepare for his defense under a superseding indictment. Therefore, even though jeopardy has attached to the defendant, the practical effect of a superseding indictment after a hung jury is no different from one returned with ample time before a trial on the merits.

We now set forth the proper application of the two principles of law to this case. Since the mistrial here as a result of the hung jury did not terminate the jeopardy which has attached to the defendants, the retrial of the defendants was not double jeopardy. *Richardson v. United States,* 468 U.S. at 325, 104 S.Ct. 3081. Since the superseding indictment allowed ample time for defendants' preparation prior to retrial, it was analogous to a superseding indictment before trial and was not analogous to a superseding indictment during trial.

*Id.* at 1570 (parallel citations omitted). We agree with that analysis, which is applicable to the case at bar, in which appellant was neither convicted nor acquitted of premeditated murder in the first trial. Accordingly, the State was not precluded from retrying appellant for felony murder in the second trial, and appellant's counsel was not ineffective for failing to file a motion for which there was no merit.

### Appellant's Motion for Modification Argument

 Although the circuit court recognized that "if this issue had been raised in the initial post conviction proceeding, it would have been granted," relief was denied on the ground that appellant failed to assert facts showing "that there is a substantial or significant possibility that the sentence would have been reduced." While it is true that *Flansburg, supra,* involved an *initial* post conviction petition, the proof of preju-

dice requirement was fully applicable to that petition. The *Flansburg* Court did not deny relief on the ground that the petitioner had failed to assert facts demonstrating a substantial possibility that the motion would be granted. We are therefore persuaded that appellant is entitled to file a belated motion for modification of sentence, provided that such a motion is filed within ninety days after our mandate is issued in this case.

**JUDGMENT DENYING APPELLANT'S MOTION TO REOPEN POST CONVICTION PROCEEDING REVERSED AS TO APPELLANT'S RIGHT TO FILE A BELATED MOTION FOR MODIFICATION OF SENTENCE; JUDGMENT OTHERWISE AFFIRMED; CASE REMANDED TO THE CIRCUIT COURT FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; APPELLANT TO PAY 75% OF THE COSTS; 25% OF THE COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**